1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   SARAH E. SPIELBERGER (Cal. Bar No. 311175)
4  KEDAR S. BHATIA (Cal. Bar No. Pending)
   Assistant United States Attorney
5  General Crimes Section
        1200 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-3358
                   (213) 894-4442
8       Email:     sarah.spielberger@usdoj.gov
                   kedar.bhatia@usdoj.gov
9
   Attorneys for Plaintiff
10 UNITED STATES OF AMERICA

11                  UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 UNITED STATES OF AMERICA,          No. CR 22-230-JFW

14           Plaintiff,               GOVERNMENT'S SENTENCING POSITION

15           v.                       Hearing Date: March 25, 2024
                                      Hearing Time: 8:00 a.m.
16 MITCHELL VAUGHN LEE,               Location:     Courtroom of the
                                                    Hon. John F. Walter
17           Defendant.

18

19

20      Plaintiff United States of America, by and through its counsel

21 of record, the United States Attorney for the Central District of

22 California and Assistant United States Attorneys Kedar S. Bhatia and

23 Sarah E. Spielberger, hereby files its sentencing position regarding

24 defendant Mitchell Vaughn Lee.

25 //

26 //

27 //

28 //

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report and Sentencing Recommendation, and any other evidence or argument that the Court may permit.

Dated: March 7, 2024                    Respectfully submitted,

                                        E. MARTIN ESTRADA
                                        United States Attorney

                                        MACK E. JENKINS
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                         /s/
                                        KEDAR S. BHATIA
                                        SARAH E. SPIELBERGER
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Mitchell Vaughn Lee already had eight separate felony convictions when, in May 2022, officers found him with a loaded firearm inside his apartment. Defendant was detained pending trial until he successfully moved the magistrate court to release him on strict bail conditions to allow him to get medical treatment. Rather than follow those conditions and get the medical treatment he requested, defendant instead absconded for nearly a year. He was eventually found and arrested on the other side of the country in Miami Beach, Florida. Three months after being arrested, defendant pleaded guilty to one count of unlawful possession of a firearm and ammunition.

For his conduct, the government recommends the Court impose a sentence of 86 months in custody, which is at the approximate mid-point of the Guidelines range, to be followed by a three-year period of supervised release. Such a sentence is sufficient, but not greater than necessary, to punish defendant's wrongful conduct and offer general and specific deterrence.

## II.   STATEMENT OF FACTS

### A.   Officers Recover a Stolen Firearm and Ammunition in Defendant's Apartment

On May 2, 2022, agents with the FBI executed search warrants at defendant's apartment in Los Angeles, California based on probable cause that he was conducting a royalty fraud scheme in the Western District of Texas. See Presentence Investigation Report, dated February 20, 2024 ("PSR"), Dkt. 130, ¶ 19; see generally Plea Agreement, Dkt. 120, ¶ 11. When agents were inside defendant's

apartment executing the warrants, they saw an empty gun holster in plain view. PSR ¶ 20. An officer asked defendant where his gun was located, and he responded that it was under the bed. Id. Under the bed, officers found the gun, which was loaded with eight rounds of ammunition. Id.; Plea Agreement ¶ 11. Later, while continuing the search, officers found three rounds of ammunition in a safe inside the apartment. PSR ¶ 21; Plea Agreement ¶ 11. The firearm and ammunition found in the apartment are depicted below:



Through a records check, law enforcement officers later learned that firearm had been reported stolen in Houston, Texas, in August 2019. PSR ¶¶ 20, 33.

**B.   Defendant Absconds for Over a Year**

Defendant was charged that same day with unlawful possession of the firearm and ammunition. Complaint, Dkt. 1. At his initial appearance, the magistrate judge ordered him detained. Minutes, Dkt. 8.

Later that year, in September 2022, when trial was two months away, defendant moved for reconsideration of the initial detention

decision, arguing that he should be released on bail conditions. Dkt. 30. He argued that bail was necessary to allow him to get a particular treatment for an urgent and critical medical condition, notwithstanding his substantial criminal history and the dangerous offense he committed. Motion for Reconsideration, Dkt. 34. On September 26, 2022, Magistrate Judge Jean P. Rosenbluth granted the defendant's motion and ordered him released on strict bond conditions that would allow him to get medical treatment. Minutes, Dkt. 42. One of the conditions imposed was that defendant return to the custody of the Bureau of Prisons by January 24, 2023. Id.

While released from custody, defendant stopped communicating with the United States Probation and Pretrial Services Office ("USPO") altogether, absconded, and became a fugitive from prosecution. Dkt. 84 at 4; PSR ¶ 24. On December 8, 2022, the USPO informed the Court that defendant's current whereabouts were unknown and recommended the Court issue a warrant for defendant's arrest. Dkt. 84 at 4. The Court issued the arrest warrant the next day. Id. Defendant did not surrender to the Bureau of Prisons by January 24, 2023, as required under his bond conditions. Id.; PSR ¶ 24.

## C. Defendant is Charged in the Western District of Texas for Operating a Royalty Fraud Scheme

While defendant was a fugitive, he was charged in the U.S. District Court for the Western District of Texas for his role in the royalty fraud scheme that was the basis of the prior warrant. Specifically, on May 22, 2023, Lee was charged in a sealed complaint with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of fraud in connection with identification documents, in violation of 18 U.S.C. § 1028. United States v. Lee, 23-cr-197-DC

1  (W.D. Tex.), Dkt. 1. The conduct in that case is based on defendant
2  acquiring the personal identifying information of various victims,
3  gaining access to their accounts through support call centers, and
4  then impersonating those victims to reroute oil and gas royalty
5  payments to his own bank account. PSR ¶ 65. On November 15, 2023, a
6  grand jury in the Western District of Texas returned an Indictment
7  charging him with two counts of wire fraud, in violation of 18 U.S.C.
8  § 1343. United States v. Lee, 23-cr-197-DC (W.D. Tex.), ECF 7
9  (providing factual detail on the charged fraud). That case is
10  currently pending.

11  **III. GUILTY PLEA AND PRESENTENCE REPORT**

12  On October 4, 2023, law enforcement arrested defendant in Miami
13  Beach, Florida. He was ordered detained there, and had his initial
14  appearance in this Court on November 1, 2023, where he was again
15  ordered detained. Trial was scheduled for January 15, 2024. Dkt. 100.

16  On January 2, 2024, two weeks before trial, defendant pleaded
17  guilty to the lone count in the Indictment, unlawfully possessing a
18  firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1),
19  pursuant to the Plea Agreement. Dkt. 124. In the Plea Agreement,
20  defendant agreed to forfeit the firearm and ten rounds of ammunition.
21  Plea Agreement ¶ 3. On January 18, 2024, the government filed a
22  Preliminary Order of Forfeiture. Dkt. 126; see also Dkt. 125
23  (application for preliminary order of forfeiture). The Plea Agreement
24  is conditional in that it allows defendant to appeal adverse
25  decisions from this Court denying his Motion to Dismiss (Dkt. 110)
26  and partially denying his Motion to Suppress (Dkt. 107). Plea
27  Agreement ¶ 4.
28

On February 20, 2024, USPO released the PSR. In the PSR, the USPO calculated defendant's offense level as 21, based on the following calculation:

| | | |
|---|---|---|
| Base Offense Level: | 20 | U.S.S.G. §§ 2K2.1, 4B1.2(a) |
| Stolen Firearm: | +2 | U.S.S.G. § 2K2.1(b)(4)(A) |
| Obstruction of Justice: | +2 | U.S.S.G. § 3C1.1, n. 4 |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(b) |

PSR ¶¶ 28-43.

Because the defendant has eight criminal history points and is in Criminal History Category IV, a total offense level of 21 results in a recommended sentencing range of 57 to 71 months' imprisonment. Id. ¶ 137; U.S.S.G., Part 5A. The USPO recommends a sentence of 60 months' imprisonment to be followed by three years' supervised release. See Probation Recommendation Letter, Dkt. 129, at 2.

## IV. GUIDELINES CALCULATION

The government concurs in the USPO's view that defendant should receive a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. See PSR ¶¶ 36-38. The government, however, objects to the USPPO's view that, notwithstanding the defendant's wanton obstruction of justice, he should also receive a three-level reduction for acceptance of responsibility. PSR ¶¶ 41-43, 137. For the reasons set forth below, the government submits that the total offense level is 24, which, at Criminal History Category IV, results in a Guidelines range of 77 to 96 months' imprisonment.

### A. Obstruction of Justice

Guidelines section 3C1.1 provides for a two-level enhancement where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to

the . . . prosecution . . . of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction . . . ." Application Note 4(E) of the same Guidelines section provides a non-exhaustive list of examples of covered conduct, specifically including "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding."

Defendant certainly obstructed justice. Defendant secured bail pending trial by claiming that it was necessary for him to receive medical treatment. PSR ¶ 10. As his surrender date approached, he stopped communicating with the USPO, and he ultimately did not surrender as ordered by Judge Rosenbluth. Id. ¶ 24; Dkt. 84 at 4. Defendant's conduct quite literally obstructed the prosecution of his matter, as defined by U.S.S.G. § 3C1.1, as the case could not proceed for almost a year while he was a fugitive. Defendant's obstruction reflects a meaningful and deliberate attempt to evade prosecution and thwart the ends of the criminal justice system. Pretrial flight deprives the public of finality and wastes judicial and law enforcement resources. Predictably, courts have applied the obstruction enhancement for other defendants who similarly fled before trial. See, e.g., United States v. Taddy, 70 Fed. App'x 962, 963 (9th Cir. 2003) (citing United States v. Draper, 996 F.2d 982 (9th Cir. 1993)); United States v. Shockey, 46 F.3d 1148 (Table), 1995 WL 23619, at *1 (9th Cir. 1995) (unpublished).

Accordingly, the defendant should receive a two-level enhancement for obstruction of justice.

**B.    Acceptance of Responsibility**

Because defendant obstructed the prosecution of this matter, he should not receive a two- or three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

U.S.S.G. § 3E1.1(a) provides a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." If a defendant qualifies for that reduction, he may also qualify for a reduction under U.S.S.G. § 3E1.1(b) "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty . . . ."

Application Note 4 to U.S.S.G. § 3E1.1 provides that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." Id. An "extraordinary case" is one in which "the defendant's obstructive conduct is not inconsistent with the defendant's acceptance of responsibility." United States v. Hopper, 27 F.3d 378, 383 (9th Cir. 1994). Such cases "arise when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice," such as where a defendant tells an accomplice to destroy evidence and then the defendant later confesses and tells the accomplice not to destroy evidence. Id. at 383 (referencing United States v. Lallemand, 989 F.2d 936, 937-38 (7th Cir. 1993)).

1   Here, by absconding before trial for over a year, defendant took
2   extraordinary steps to _avoid_ accepting responsibility. Only after
3   being arrested in Florida, detained, and on the eve of trial did he
4   plead guilty. Defendant has not "clearly demonstrate[ed]" an
5   acceptance of responsibility for his actions. His conduct falls
6   squarely within the obstructive conduct that warrants an enhancement
7   under U.S.S.G. § 3C1.1, which precludes a reduction for acceptance of
8   responsibility absent "extraordinary" circumstances. No such
9   extraordinary circumstances exist. The defendant did not have a
10  sudden change of heart or reverse the obstructive conduct he put into
11  motion. See Hopper, 27 F.3d at 383. He did not turn himself in and
12  confess, but rather admitted guilt only after he was apprehended
13  almost a year later on the other side of the country following the
14  issuance of an arrest warrant. Courts have consistently held that
15  defendants fleeing under similar circumstances are not entitled to a
16  points-reduction for acceptance of responsibility. See, e.g., United
17  States v. Schwindt, 378 Fed. App'x 721, 724 (9th Cir. 2010); United
18  States v. Reed, 52 Fed. App'x 17, 18 (9th Cir. 2002); United States
19  v. Thompson, 80 F.3d 368, 371 (9th Cir. 1996). To the extent the
20  defendant claims that pleading guilty after being re-arrested should
21  entitle him to acceptance points, he fails to show anything
22  "extraordinary" about that behavior.
23  Accordingly, the Court should decline to apply the three-level
24  reduction in the offense level under U.S.S.G. § 3E1.1.
25  **C.   Guidelines Calculation**
26  If the Court adopts the government's position regarding
27  acceptance of responsibility and accepts the remainder of the
28  Guidelines calculation in the PSR, the total offense level will be

24.[1] At Criminal History Category IV, the resulting Guidelines recommended term of imprisonment is 77 to 96 months' imprisonment. U.S.S.G., Part 5A.

## V. SENTENCING RECOMMENDATION

### A. Applicable Law

The Court must impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a). The Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In addition, the Court should fashion a sentence that reflects the seriousness of the offense, promotes respect for the rule of law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from future crimes of the defendant, among other considerations. 18 U.S.C. § 3553(a)(2).

### B. The Court Should Impose a Mid-Point Guidelines Sentence

The government respectfully submits that a sentence at the mid-point of the correct Guidelines range, 86 months' imprisonment, is appropriate. Such a sentence is warranted due to the nature and circumstances of the offense, the need to provide just punishment, the history and characteristics of the defendant, and the need for specific and general deterrence.

First, the nature of the offense and seriousness of defendant's conduct demands a substantial term of imprisonment. The bare offense

---

[1] The government also agrees with the USPO's conclusion that the enhancement for a stolen firearm applies in this case. See PSR ¶ 33; U.S.S.G. § 2K2.1(b)(4)(A). A police report shows that the firearm in question was stolen during a vehicle burglary in Houston, Texas, in 2019. See PSR ¶ 20; see also Declaration of Kedar S. Bhatia & Exh. A (police report); Id., Exh. B (trace report).

11

of unlawfully possessing a firearm is serious and worthy of a meaningful sentence. But other circumstances make defendant's crime even more serious. Defendant's firearm was loaded, and he had a holster in plain view and ammunition stored in nearby safe. The firearm itself was stolen. Even worse, he unlawfully possessed the firearm and ammunition while he was embroiled in a separate interstate fraud scheme for which he was later indicted. These facts all increase the seriousness of the offense and, together, warrant a substantial term of imprisonment.

Second, defendant's significant criminal history and flight from prosecution show that an 86-month sentence is necessary to deter him from future criminality. Defendant's criminal history goes back twenty years and includes eight felony convictions and at least six misdemeanor convictions. PSR ¶¶ 48-61. Defendant's crimes have become increasingly serious, with a 2016 conviction for assaulting a store employee as he was caught stealing goods, for which he served one year in jail, his 2022 arrest for the instant unlawful firearms and ammunition possession, and his 2023 federal indictment for the royalty fraud scheme. Id. ¶¶ 61, 65. Shorter terms of incarceration have not deterred defendant – he served 16 months' incarceration in 2004 for burglary nevertheless proceeded to suffer six subsequent felony convictions. Even defendant's arrest in this case did not deter his brazen flight from prosecution. A substantial term of imprisonment is necessary to prevent defendant from committing other crimes endangering the community.

Third, an 86-month sentence is necessary to afford adequate deterrence to others in the community who may unlawfully possess and use firearms and to promote respect for the law. There can be no

stronger need for general deterrence than to send the message that unlawful possession of firearms and ammunition in Los Angeles will not be tolerated. Section 3553(a)(2) calls for this Court to consider in shaping a sentence the need "to promote respect for the law" and "to afford adequate deterrence to criminal conduct." These factors weigh strongly in favor of a significant term of imprisonment.

A lesser term of imprisonment would not meet the ends of sentencing. The defendant has shown his true colors time and again through his earlier crimes like burglary, assault by means likely to produce great bodily injury, and drug trafficking. He is facing prosecution in another federal district for a sophisticated fraud scheme. The defendant's crimes have escalated, and he has shown no sign of stopping.

To the extent the defendant seeks leniency due to medical reasons, that plea rings hollow. He already once exploited his medical condition to get leniency from the Court, and he seriously abused that trust. His medical conditions do nothing to mitigate his culpability, nor did they prevent him from fleeing across the country for over a year. Moreover, defendant cannot show that the BOP is unable to treat defendant's medical conditions. Ultimately, defendant's medical issues do not warrant significant leniency and do not outweigh the meaningful aggravating circumstances described above.

Balancing the § 3553(a) factors, the government submits that a sentence of 86 months' imprisonment – which is just below the mid-point of the applicable Guidelines range – is sufficient but not greater than necessary.

1       Given the defendant's substantial criminal history, the
2   government submits that a three-year term of supervised release is
3   appropriate. The defendant has shown through is own conduct that he
4   will return to crime. Supervised release will give him the
5   appropriate support to avoid crime and the appropriate penalties
6   should he breach the court's trust. The government also asks that the
7   Court enter the Preliminary Order of Forfeiture as a Final Order of
8   Forfeiture at sentencing.

9   **VI.   CONCLUSION**

10       For the foregoing reasons, the government respectfully
11   recommends that the Court sentence defendant to a mid-point
12   Guidelines term of 86 months' imprisonment, a three-year term of
13   supervised release, forfeiture as set forth in the Preliminary Order
14   of Forfeiture, and the mandatory $100 special assessment.

DECLARATION OF KEDAR S. BHATIA

I, Kedar S. Bhatia, declare as follows:

1.     I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California. I am one of the attorneys responsible for prosecuting the matter of United States v. Mitchell Vaughn Lee, No. 2:23-cr-230-JFW.

2.     Attached hereto as Exhibit A is a trace report from the Bureau of Alcohol, Tobacco, Firearms, and Explosives for a Glock 23 with serial number BKWM339 (the "Trace Report"), which is the firearm referenced in the Indictment in this matter and recovered from defendant's apartment on May 12, 2022. As reflected in the report, the firearm was purchased by "J███ T██████ D██████," with address "████████████████ HOUSTON, TX 77065" and Texas Driver's License ████████ The firearm was sold to D████ on June 24, 2019.

3.     Attached hereto as Exhibit B is a report by the Harris County Constable's Office regarding two stolen firearms (the "Harris County Report"), including a Glock 23 with serial number BKM339. The victim-complainant who reported the firearm missing was "████████ ████████████" with home address "█████████████████ Houston, TX 77065" and Texas Driver's License ████████ The firearm was reported stolen in a vehicle burglary on August 18, 2019.

4.     Although there are minor differences in the two reports – such as a serial number with one different digit, a misspelling of the purchaser's first name in the Trace Report, and dates of birth several days apart – both documents list the purchaser and victim-complainant as the same person, with the same home address and driver's license number. The firearms are also reported nearly identically, with only one digit missing in the Harris County Report,

1  which was made after the firearm was stolen. The Trace Report lists

2  D███████ as the person to whom the firearm was sold, and Lee as the

3  person from whom the firearm was recovered. Accordingly, the

4  government submits that the firearm referenced in the Indictment and

5  in the Trace Report was reported stolen, as reflected in the Harris

6  County Report.

7      I declare under penalty of perjury under the laws of the United

8  States of America that the foregoing is true and correct and that

9  this declaration is executed at Los Angeles, California, on March 7,

10  2024.


        ___/s/_____
        KEDAR S. BHATIA
        Assistant United States Attorney